IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| APPLIED UNDERWRITERS, INC., | ) | CASE NO. 8:07CV206 |
| A Nebraska Corporation, and | ) | |
| APPLIED RISK SERVICES, INC., | ) | |
| A Nebraska Corporation, | ) | |
| | ) | MEMORANDUM |
| Plaintiffs, | ) | AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| Combined Management, Inc., | ) | |
| A Maine Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 4) submitted by the Defendant, Combined Management, Inc. ("CMI"). For the reasons that follow, I find that CMI has not purposefully transacted business in Nebraska, and that this Court lacks personal jurisdiction over it.

**FACTS**

The Plaintiffs, Applied Underwriters, Inc., and Applied Risk Services, Inc. (collectively "Applied"),[1] are Nebraska corporations with their principal place of business in Omaha, Nebraska. (Complaint, Filing No. 1-2, ¶ 1). CMI is a corporation domiciled in Maine. (*Id.*, ¶ 2). CMI engages in outsourced human resources, maintaining individuals on its payroll and leasing those individuals to clients. (Affidavit of Robert L. Murch ("Murch Aff."), Filing No. 4-2, ¶ 2; Affidavit of Todd Brown ("Brown Aff."), Filing No. 5-2, ¶ 3).

CMI's president, Robert L. Murch, oversaw the procurement of workers' compensation coverage for CMI in fiscal years 2002 and 2003, including the selection of

---

[1] Applied Underwriters, Inc., is the corporate parent of Applied Risk Services, Inc. (Affidavit of Todd Brown, Filing Noc. 5-2, ¶ 1).

and negotiation with the coverage provider. (Murch Aff. ¶3). At the time he sought that coverage, Virginia Surety Company, Inc. ("VSCI") was an insurance carrier registered with the Maine Bureau of Insurance, authorized to sell workers' compensation insurance in Maine. (*Id.*, ¶ 4). CMI selected VSCI to provide workers' compensation coverage to CMI and its client employees on a master policy basis for the policy period of March 29, 2002, through May 2, 2003. (*Id.*, ¶ 5). Murch understood VSCI to be based in Chicago, Illinois,[2] and Murch conducted the negotiations in Maine, by telephone and/or mail. (*Id.*).

At the time CMI selected VSCI to provide worker's compensation coverage, Murch was informed that Applied was a California-based company, also doing business in Maine, and that Applied would be the "producer a/k/a broker" of the policy as the agent for VSCI. (*Id.* ¶ 6). Prior to commencement of the coverage, Applied provided CMI with a proposal illustrating how premiums were to be paid and calculated. (*Id.* ¶ 7). CMI agreed to the premium and calculation method proposed by Applied, on behalf of VSCI, although no written agreement was executed. (*Id.*). Murch conducted all the negotiations in Maine, by telephone and/or mail. (*Id.*). Murch's only points of contact with Applied prior to and immediately after procuring coverage were Carl DeBarbrie and Gerry Macchello, both of whom were located in San Francisco, California. (Supplemental Affidavit of Robert L. Murch, Filing No. 8-2 ("Supp. Murch Aff.") ¶ 3). When making telephone contact with these individuals, Murch used a phone number with a California area code. (*Id.*).

Applied asserts that it is the "managing general agent" for VSCI, and that Applied issued its proposal for workers' compensation coverage for CMI as the result of a contact

---

[2] Virginia Surety communicated with CMI on letterhead showing a Chicago, Illinois, address. (Supplemental Affidavit of Robert L. Murch, Filing No. 8-2, ¶ 6 and Ex. 3).

2

from the Barrow Group, a limited liability company headquartered in Atlanta, Georgia. (Brown Aff., ¶ 3-4). Applied states that the insurance policy was issued in Omaha, Nebraska; that CMI sent all premium checks to Applied in Omaha; that all claims by CMI and its clients from March 29, 2002, through May 2, 2003, were submitted to Applied in Omaha; and that all claim checks were processed, issued and forwarded from Applied's Omaha office. (Brown Aff., ¶¶ 5-6). Applied further asserts that during collection negotiations, CMI's president, Robert Murch, communicated with Applied by e-mail directed to Applied's office in Omaha. (*Id.*, ¶ 12).

On April 23, 2007, Applied brought this action in the District Court of Douglas County, Nebraska. (Complaint, Filing No. 1-2). Applied alleges that it provided workers' compensation insurance to CMI from March 29, 2002, through May 2, 2003, with a profit-sharing component, whereby CMI would participate in the profits or losses generated by the insurance policies, and that CMI owes Applied $278,901.48 plus interest. (*Id.*, ¶¶ 5-8).

CMI removed the action to this Court on May 29, 2007 (Filing No. 1) and, on June 4, 2007, moved to dismiss for lack of personal jurisdiction, contending that its right to due process will be violated if it is forced to defend itself in this forum. (Filing No. 4).

## STANDARD OF REVIEW

In order to survive CMI's motion to dismiss for lack of personal jurisdiction, Applied need only make a prima facie showing of personal jurisdiction over CMI. *Digi-tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Court must view the evidence in the light most favorable to Applied and must resolve all factual conflicts in its favor. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004).

3

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute, codified at Neb. Rev. Stat. § 25-536 (2006)[3], are satisfied, and (2) whether the exercise of jurisdiction over the defendant will violate the Due Process Clause of the Fourteenth Amendment.  *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996).  Because Nebraska's long-arm statute has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States

---

[3]The Nebraska long-arm statute provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (2006).

Constitution, constitutional limits will dictate whether personal jurisdiction over CMI is proper. *Quality Pork Intern. v. Rupari Food Servs., Inc.*, 675 N.W.2d 642, 649 (Neb. 2004).

"Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Id.*

Once it has been determined that the nonresident defendant established contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Id.* at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience

of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983); see also *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004). The fourth and fifth factors are of secondary importance and not determinative. *Land-O-Nod,* 708 F.2d at 1340. In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

It is the third element of the above test -- the relationship between the cause of action and the contacts -- that gives rise to the distinction between specific and general jurisdiction. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.), *cert. denied*, 510 U.S. 814 (1993)). When specific jurisdiction exists, "[a]ll that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state." *Bell Paper Box,* 22 F.3d at 820. "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp.*, 471 U.S. at 474.

## ANALYSIS

The Eighth Circuit has reaffirmed as recently as 2006, that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause,"

*Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006) citing *Porter v. Berall,* 293 F.3d 1073, 1075 (8th Cir. 2002). However, frequent communications, when taken together with some other action directed toward the forum state, may help establish sufficient minimum contacts. *Northwest Airlines, Inc. v. Astraea Aviation Servs. Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997).

In recent Eighth Circuit Court opinions, a district court's refusal to exercise personal jurisdiction over the nonresident defendant was affirmed. *See Johnson v. Woodcock,* 444 F.3d 953 (8th Cir. 2006); *Porter v. Berall,* 293 F.3d 1073, 1076 (8th Cir. 2002); and *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920 (8th Cir. 1995). In *Johnson*, the Eighth Circuit Court emphasized that the nonresident's contacts with the forum state were remote in time and were too random, fortuitous or attenuated to support the assertion of either specific or general jurisdiction. 444 F.3d at 956 (citation omitted). In *Porter v. Berall*, the nonresident defendant did not initiate the business relationship with the resident of the forum state. 293 F.3d at 1075-76. In *Bell Paper Box, Inc. v. Trans Western*, the parties negotiated and contracted through a broker who was located outside the forum state, and the nonresident did not initiate the contact. 53 F.3d at 921-22.

In the instant case, Applied does not contend that this Court has general personal jurisdiction over CMI, but asserts that the Court does have specific personal jurisdiction. (Plaintiff's Brief in Opposition to Motion to Dismiss, Filing No. 5, p. 10). It is undisputed that CMI did not initiate the contact with Applied. Although Applied asserts that its proposal "provided that the workers' compensation policy to be issued to Combined Management's clients was issued in Omaha, Nebraska," (*id.* at p. 6), the proposal itself makes no

7

reference to Omaha or Nebraska.  (Brown Aff., Ex. 2).  The insurance binder issued by Applied to CMI lists Applied's address as P.O. Box 281900, San Francisco, CA 94218-1900, with a telephone number bearing a California area code of 415.  (*Id.*, Ex. 3, p.1).  The telephone number listed by Applied on its statements and invoices is a toll-free number with an area code of 866.  (Id., Ex. 5).  The e-mail address that Applied contends was used by CMI president Robert Murch to communicate with Applied in Nebraska gives no indication that the e-mail communication will be directed to Nebraska.   (*Id.*, Ex. 7).  In response to those e-mail communications, Applied representative Larry Billman provided Murch with another telephone number with a toll-free area code of 877.  (*Id.*).  Audit statements sent to CMI from Applied in 2004 do list an Omaha "Regional Service Center" address (*id.*, Ex. 6), as does the Profit Sharing Statement sent to CMI by Applied in 2006.  (*id.*, Ex. 5).

Although CMI representatives may have initiated telephone calls and e-mail communications that were received by Applied in Nebraska, there is no evidence that CMI representatives knew that their telephone calls or e-mail communications were directed to anyone in Nebraska.  Accepting as true Applied's assertion that the insurance policy was issued in Nebraska, that merely reflects the unilateral action of Applied and not an action of CMI.  Also accepting as true Applied's assertion that CMI sent premium payments and claims to Applied's office in Nebraska, where such payments and claims were processed, that fact is consistent with CMI's understanding that Applied had a regional service center in Nebraska, and does not contradict CMI's evidence that Applied held itself out to be headquartered in California, nor the undisputed evidence that CMI believed Applied to be headquartered in California.  (Supp. Murch Aff. ¶¶ 3-5, 7-10; Ex. 1, 2, 4, 5, 6).

Applied has not made a prima facie showing of personal jurisdiction over CMI. The alleged contacts that CMI had with Nebraska by telephone, mail, or e-mail, are insufficient to justify the exercise of personal jurisdiction under the due process clause. Maintenance of the suit by Applied against CMI in Nebraska offends traditional notions of fair play and substantial justice, because CMI's conduct and connection with Nebraska were not such that it reasonably could have anticipated being haled into court in Nebraska. CMI did not purposefully avail itself of the privilege of conducting activities within Nebraska, invoking the benefits and protections of the laws of Nebraska, and all five of the *Burlington Industries* factors weigh against this Court's exercise of personal jurisdiction over CMI.

## CONCLUSION

Because CMI did not purposefully transact business in Nebraska, this Court lacks personal jurisdiction over CMI and its motion to dismiss will be granted.

IT IS ORDERED:

1. The Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 4) filed by Defendant Combined Management, Inc., is granted; and

2. The Complaint of the Plaintiffs Applied Underwriters, Inc., and Applied Risk Services, Inc. (Filing No. 1-2) is dismissed without prejudice.

DATED this 18th day of July, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge